CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

2/25/2020

JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez

DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

CITY OF WINCHESTER, VIRGINIA,

*Plaintiff*

v.

MALLINCKRODT PLC; MALLINCKRODT
LLC; SPECGX LLC; ENDO HEALTH
SOLUTIONS, INC; ENDO
PHARMACEUTICALS, INC.; PAR
PHARMACEUTICAL COMPANIES,
INC.; PAR PHARMACEUTICAL, INC.;
TEVA PHARMACEUTICALS USA, INC.;
CEPHALON, INC.; BARR
LABORATORIES, INC.; WATSON
LABORATORIES, INC.; ACTAVIS
PHARMA, INC.; ACTAVIS, LLC;
ALLERGAN PLC; ALLERGAN FINANCE,
LLC; MYLAN PHARMACEUTICALS INC.;
MYLAN INSTITUTIONAL INC.; INDIVIOR
INC.; MCKESSON CORPORATION;
MCKESSON MEDICAL-SURGICAL INC.;
CARDINAL HEALTH, INC.;
AMERISOURCEBERGEN DRUG
CORPORATION; HENRY SCHEIN, INC.;
GENERAL INJECTABLES & VACCINES,
INC.; INSOURCE, INC.; CVS HEALTH
CORPORATION; CVS PHARMACY, INC.;
CVS TN DISTRIBUTION, L.L.C.;
VIRGINIA CVS PHARMACY, L.L.C.;
WALGREENS BOOTS ALLIANCE, INC.;
WALGREEN CO.; WALGREEN EASTERN
CO., INC.; EXPRESS SCRIPTS HOLDING
COMPANY; EXPRESS SCRIPTS, INC;
EXPRESS SCRIPTS PHARMACY, INC.;
CAREMARK RX, L.L.C.; CAREMARKPCS
HEALTH, L.L.C.; CAREMARK, L.L.C.;
CAREMARKPCS, L.L.C.; UNITEDHEALTH
GROUP INCORPORATED; OPTUM, INC.;

Civil Action No. ___5:20-cv-00013___

Removed from Case No. CL20-94
Circuit Court for the City of Winchester,
Virginia

OPTUMRX, INC*:* WALMART INC.;
ESI MAIL PHARMACY SERVICE, INC.;
RITE AID CORP.; RITE AID OF VIRGINIA,
INC.; RITE AID MID-ATLANTIC; RITE AID
OF MARYLAND, INC.; ECKERD
CORPORATION; and DOES 1-100,
                                    *Defendants.*

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, 1442, and 1446, defendants Express Scripts, Inc., Express Scripts Holding Company, Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc. (together, "Express Scripts"), along with CVS Health Corporation; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; Caremark, L.L.C.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc. (collectively, "Removing Defendants") hereby give notice of removal of this action, captioned *City of Winchester, Virginia v. Mallinckrodt PLC, et al.*, bearing case number CL20000094-00 (the "Action").

## INTRODUCTION

1.    This Action is one of over 2,300 opioid cases in the federal multidistrict litigation ("Opiate MDL")[1] filed against manufacturers, distributors, and pharmacies that dispense prescription opioid medications by government entities, among other plaintiffs, seeking to recoup costs allegedly incurred in addressing issues related to the opioid abuse epidemic.  The plaintiffs

---

[1] On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") formed the Opiate MDL and transferred opioid-related actions to Judge Dan Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407.  *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (U.S. Jud. Pan. Mult. Lit. 2017). As the JPML found in centralizing these cases, "centralization will substantially reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations, and prevent conflicting rulings on pretrial motions."  *Id.* at 1379.

in these cases generally allege that manufacturers, distributors, and pharmacies created a fraudulent scheme to inflate the prescription opioid market by misleading doctors and the public about the addictive nature and efficacy of opioids.  In some cases, as here, the plaintiffs also claim that pharmacy benefit managers ("PBMs"), through their formulary design and management, ensured that opioids were regularly prescribed and flooded the market.

2.      Like the other MDL opioid cases, this Action seeks recovery based on alleged injuries to the general population — including veterans — and seeks to hold Express Scripts and the other defendants accountable. Express Scripts provides pharmacy benefit management services and administers the mail order pharmacy of the Department of Defense's ("DOD") health care program, TRICARE, pursuant to a contract with the DOD throughout the country, including Virginia.  As such, Express Scripts is entitled to remove this Action because (1) it is a "person acting under" a federal officer, (2) the charged conduct in the Complaint relates to an act under color of office, and (3) it has colorable federal defenses, including the government contractor defense and preemption based on the federal TRICARE Statute.  *See* 28 U.S.C. § 1442(a)(1).  As further explained below, this case is therefore removable under the federal officer statute.

3.      PBM Defendants Express Scripts, Inc., Express Scripts Holding Company, CVS Health Corporation; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; Caremark, L.L.C.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc. (together, "PBMs" or "PBM Defendants") also remove on the separate and independent ground of diversity jurisdiction under Federal Rule of Civil Procedure 21 severance and the doctrine of fraudulent misjoinder.  There is complete diversity of citizenship between Plaintiff and all PBM Defendants, the only properly joined Defendants.  Plaintiff is a Virginia citizen, and all the PBM Defendants are citizens of states or foreign states other than Virginia.  The allegations against the PBMs concern their purported

control of formularies and are separate and distinct from the allegations against the non-PBM Defendants.  The non-PBM Defendants can thus be severed under Rule 21 and their citizenship ignored under fraudulent misjoinder.

## BACKGROUND

**A.    This Action Is Substantially Similar to the Other 48 Actions Stayed and Transferred to the Opiate MDL.**

4.    This opioid-related action is among 58 actions filed largely by the same plaintiff's firm on behalf of cities and counties in the Commonwealth of Virginia against the same core group of defendants from March 2018 to the present.[2]  Plaintiff's counsel filed 12 of those cases between March 14, 2018 and December 6, 2018 ("First Wave Cases").  Between March 25, 2019 and August 9, 2019, plaintiff's counsel filed the next batch of 34 cases ("Second Wave Cases").  On September 19 and 20, 2019, the same plaintiff's counsel filed two actions, initiating the next wave of cases ("Third Wave Cases").  Since then, they have filed 10 additional actions, including this one.  *See* **Exhibit 1** [List of Opioid Cases].

5.    All of the First, Second, and Third Wave Cases were tagged for potential inclusion in the federal MDL, *In re National Prescription Opiate Litigation*, No. 1:17-md-02804 (N.D. Ohio) (Polster, J.) ("Opiate MDL").  The JPML issued a conditional transfer order for all those cases, signaling that they should be included in the Opiate MDL because they involve questions of fact that are common to the actions previously transferred to the MDL.  To date, 48 cases have been stayed — by nine different judges in the Western and Eastern Districts of Virginia — with 45 of those 48 cases transferred to the Opiate MDL, with the remaining cases awaiting a final

---

[2] The same plaintiff's firm representing City of Winchester has represented Virginia localities in 57 actions.  A different law firm represented plaintiff in *Buchanan County v. Purdue Pharma, L.P.*, No. 1:18-cv-00047 (W.D. Va.) (Dillon, J.).

transfer decision by the JPML.

6.      All but one of the 47 First Wave and Second Wave Cases were removed on identical grounds based on diversity (fraudulent joinder, fraudulent misjoinder, and Rule 21 severance), as well as under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) and 1453(b) ("CAFA"), and federal question jurisdiction pursuant to 28 U.S.C. §§ 1441(a) and 1331.[3]  In the vast majority of the cases (43 out of 47), the Western and Eastern Districts of Virginia granted motions to stay pending the JPML's final transfer decision.[4]  Express Scripts has removed the Third Wave Cases on an additional ground based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

7.      To date, more than 2,300 actions have been transferred to, or filed directly in, the Opiate MDL.  Among all the opioid cases filed across the country (pending both in the MDL and other courts), a relatively small number (approximately 86) involve pharmacy benefit managers. The vast majority of these cases have transferred to the Opiate MDL or soon will be transferred, aside from three cases pending in Virginia state courts (and two cases in Missouri state courts).

8.      The allegations in these transferred cases, and the defendants who are named, are largely identical.  The principal difference between the cases is a rotating cast of non-diverse defendants joined for the sole purpose of thwarting diversity in an effort to avoid (and undermine)

---

[3] Only one case, *City of Martinsville v. Purdue Pharma, L.P.*, No. 4:18-cv-00072 (W.D. Va.) (Dillon, J.), was removed solely under CAFA because defendant Mylan Pharmaceuticals Inc. ("Mylan") was served and did not consent to removal at the time.  Mylan has since indicated consents to the removals of the Second Wave and Third Wave Cases.

[4] Only three cases removed under similar bases (including fraudulent misjoinder/severance) have been remanded: *Board of Supervisors of Arlington County v. Purdue Pharma, L.P.*, 1:19-cv-00402 (E.D. Va.) (Trenga, J.) (subsequently removed based on federal officer jurisdiction and again remanded, appeal pending); *Dinwiddie County v. Purdue Pharma, L.P.*, 3:19-cv-00242 (E.D. Va.) (Payne, J.); and *Mecklenburg County v. Purdue Pharma, L.P.*, No. 3:19-cv-00463 (E.D. Va.) (Payne, J.).

the MDL.  That is the case here.  Accordingly, this case, too, should proceed in federal court and be transferred to the MDL.

  **B.**  **The Allegations in the Complaint**

  9.  On February 12, 2020, City of Winchester ("Plaintiff") filed this Action in the Circuit Court of City of Winchester, Virginia (the "State Court").  The Complaint (attached hereto, along with the state court file, as **Exhibit 2**) names the following defendants, as well as unnamed, unidentified Doe defendants:

    a.  "PBM Defendants" — Express Scripts Holding Company; Express Scripts, Inc.; CVS Health Corporation; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; Caremark, L.L.C.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.  *See* Compl. ¶¶ 188–220.

    b.  "Manufacturer Defendants" — Mallinckrodt plc; Mallinckrodt LLC; SpecGX LLC; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Par Pharmaceutical Companies, Inc.; Par Pharmaceutical, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Barr Laboratories, Inc.; Watson Laboratories, Inc.; Actavis Pharma, Inc.; Actavis LLC;[5] Allergan Finance, LLC; Allergan plc; Mylan Pharmaceuticals Inc.; Mylan Institutional Inc.; Indivior, Inc. *See id.* ¶¶ 31–101.

    c.  "Distributor Defendants" — McKesson Corporation; McKesson Medical-Surgical Inc.; Cardinal Health, Inc.; AmerisourceBergen Drug Corporation; Henry Schein, Inc.; General Injectables & Vaccines, Inc.; Insource, Inc.; CVS Health Corporation; CVS Pharmacy, Inc.; CVS TN Distribution, L.L.C.; Walgreens Boots Alliance, Inc.; Walgreen Co.; Walgreens Eastern Co., Inc.; Walmart Inc.; Rite Aid Corp.; Rite Aid of Maryland, Inc.; Rite Aid Mid-Atlantic;

---

[5] Actavis LLC is incorrectly named in the Complaint as "Actavis, LLC."

*See id.* ¶¶ 102–53.

        d.     "Pharmacy Defendants" — CVS Health Corporation; CVS Pharmacy, Inc.; Virginia CVS Pharmacy, L.L.C.; Caremark Rx L.L.C.; Caremark, L.L.C.; Express Scripts Holding Company; ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc.; OptumRx, Inc.; Walgreen Co.; Walgreens Boots Alliance, Inc.; Rite Aid Corp.; Rite Aid of Virginia, Inc.; and Eckerd Corporation; as well as other entities that purportedly fall under the PBM and Distributor Defendant groups. *Id.* ¶¶ 154–87.

        10.    Like its predecessors, the thrust of this Complaint is that the Manufacturer Defendants engaged in a marketing and promotional campaign based on misrepresentations about the risks and benefits of FDA-approved prescription opioid medications. *See id.* ¶¶ 101, 239–311.

        11.    Plaintiff also relies on various alleged types of mismarketing, including a "campaign to promote opioids for returning veterans, which has contributed to high rates of addiction and other adverse outcomes — including death — among returning soldiers" and contrasting the Manufacturer Defendants' guidelines with independent guidelines, such as those issued by the Department of Veterans Affairs and the DOD. *Id.* ¶¶ 261, 307, 311. Plaintiff relies for its claims on "every opioid prescription [filled]" by the mail order and retail pharmacies. *Id.* ¶ 16. The Complaint additionally relies on the *total* volume of opioids in the marketplace (*id.* ¶¶ 224–25), and with respect to Express Scripts on purported *nationwide* purchases (*id.* ¶¶ 489–91). Plaintiff's broad claims referencing the total volume of opioids and reference to guidelines for veterans necessarily means Plaintiff seeks recovery based on alleged injuries to veterans, and seeks to hold Express Scripts and the other Defendants accountable. As explained below in Section I, the claims thus implicate Express Scripts' performance under its contract with the DOD to provide services to members of the DOD health program, TRICARE, and should consequently be

removed to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

12.     Against the Distributor and Pharmacy Defendants, Plaintiff alleges that they "fail[ed] to implement effective controls and procedures in their supply chains to guard against theft, diversion and misuse of prescription opioids, and fail[ed] to adequately design and operate a system to detect, halt, and report suspicious orders of prescription opioids." *Id.* ¶ 598.

13.     The allegations against the PBM Defendants relate to entirely distinct conduct having nothing to do with the alleged deceptive promotion of opioid medications (Manufacturer Defendants) or the alleged failure to implement effective controls and procedures in their supply chains (Distributor and Pharmacy Defendants).  Plaintiff alleges that the PBMs "design plans and create formularies which set the criteria and terms under which pharmaceutical drugs are reimbursed" (*id.* ¶ 20), which purportedly "allow[ed] the drugs to enter the marketplace to be abused" (*id.* ¶ 512).  *See also id.* ¶¶ 499–588.

14.     The Complaint asserts twelve causes of action.  Seven are pleaded against "all Defendants," although each individual claim rests almost entirely on alleged conduct involving the Manufacturer, Distributor, and/or Pharmacy Defendants, on the one hand, or the PBM Defendants on the other:  (1) statutory public nuisance; (2) common law public nuisance; (3) violation of the Virginia Consumer Protection Act; (4) fraud; (5) common law civil conspiracy; (6–8) negligence per se; (9) negligence, (10) gross negligence; (11) willful and wanton negligence; and (12) unjust enrichment.  *Id.* ¶¶ 589–731.  Against the PBMs, Plaintiff asserts all these claims except for violation of the Consumer Protection Act, fraud, and negligence per se.  Based on these claims, Plaintiff seeks compensatory damages of at least $50,000,000, punitive damages, and other relief.  *See id.*, Prayer for Relief ¶¶ (1)-(2).

## VENUE AND JURISDICTION

15.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 127, 1391, 1441(a), and 1446(a) because the Circuit Court of City of Winchester, Virginia, where the Complaint was filed, is a state court within the Western District of Virginia.

16.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332(a) and 1442(a) because (1) this case was properly removed under the federal officer statute and/or there is complete diversity of citizenship between Plaintiff and all properly joined defendants; (2) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (3) all other requirements for removal have been satisfied.

## GROUNDS FOR REMOVAL

### I.    THIS CASE IS REMOVABLE UNDER THE FEDERAL OFFICER STATUTE.

17.    The Express Scripts PBM and mail pharmacy entities all are entitled to remove this Action based on the federal officer statute.  Any person "acting under" a federal officer who is sued "for or relating to any act under color of such office," may remove to federal court.  28 U.S.C. § 1442(a)(1).  A party seeking federal officer removal must show: "(1) that it 'act[ed] under' a federal officer; (2) that it has 'a colorable federal defense;' and (3) that the charged conduct was carried out for or in relation to the asserted official authority."  *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017) (citations omitted).

18.    The United States Supreme Court has mandated that the federal officer removal statute be "liberally construed."  *Watson v. Philip Morris Cos., Inc*., 551 U.S. 142, 147 (2007). The Fourth Circuit has repeatedly acknowledged this breadth, noting that the Supreme Court "rejected 'narrow, grudging interpretation[s] of the statute.'"  *Sawyer*, 860 F.3d at 258; *see also Jamison v. Wiley*, 14 F.3d 222, 239 (4th Cir. 1994) (describing removal jurisdiction under Section

1442(a) as "mandatory, not discretionary"); *Kolibash v. Comm. on Legal Ethics of W. Va. Bar*, 872 F.2d 571, 576 (4th Cir. 1989) (finding statute to be "broadly construed"); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (concluding that there is "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal").

19.    The Opiate MDL Court affirmed that federal officer removal was proper in two cases alleging that the removing defendant distributed opioids pursuant to a contract with the government.  *See In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d 1064, 1078–79 (N.D. Ohio 2018) (denying motions to remand and recognizing "the Supreme Court's mandate to give the Federal Officer Removal Statute a liberal interpretation").  Express Scripts also satisfies the requirements for federal officer removal.[6]

### A.    Express Scripts Is a "Person Acting Under" a Federal Officer.

20.    Express Scripts was acting under a federal officer.  Private entities are "acting

---

[6] Among the at least 72 federal-officer removed cases to date, only one court has granted Plaintiff's motion to remand.  *See Cty. Bd. of Arlington Cty.*, *Virginia v. Mallinckrodt PLC*, No. 1:19-cv-01446 (E.D. Va. Jan. 3, 2020) (Trenga, J.), Dkt. No. 54 ("*Arlington II*").  That case, however, is facially distinguishable because in *Arlington II*, only two of the four defendants (Express Scripts Pharmacy, Inc. and ESI Mail Pharmacy Service, Inc. [together, "ESI Mail Pharmacy"]) removed under the federal officer statute.  Here, all the Express Scripts entities, including Express Scripts, Inc. (the party contracting with the DOD) are the removing defendants.  The *Arlington II* opinion itself acknowledges that Express Scripts, Inc. is a direct contractor with, and under direct government oversight by, the DOD.  *Id.*, Dkt. No. 54, at 11.  Thus, even under the *Arlington II* reasoning, Express Scripts, Inc. properly removed this action.

In any event, on January 8, 2020, ESI Mail Pharmacy filed a notice of appeal of the *Arlington II* decision, exercising its statutory right to appeal under 28 U.S.C § 1447(d).  ESI Mail Pharmacy is likely to prevail on appeal because the detailed DOD contract and the applicable liberal standard mandated by the U.S. Supreme Court and Fourth Circuit law supports federal officer jurisdiction over the claims against ESI Mail Pharmacy.  ESI Mail Pharmacy will file its moving brief by March 9, 2020.

under" a federal officer when involved in "an effort to *assist* or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152–53; *Sawyer*, 860 F.3d at 254 (holding private manufacturer was acting under federal officer in manufacturing under military contracts); *see also Bennett v. MIS Corp.,* 607 F.3d 1076, 1088 (6th Cir. 2010) (finding party acting under federal officer where, if not for the contract with the company, the government "itself would have had to perform" the task). Appellate courts have liberally construed the "acting under" prong. *See, e.g.*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (holding manufacturer that supplied turbines to Navy satisfied statute, stating it "liberally construe[s]" the term "acted under"); *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (holding rural electric cooperative satisfied statute stating "[t]he phrase 'acting under' is broad and thus we 'liberally construe' this portion of § 1442(a)(1)").

21.     The Fourth Circuit holds that the "acting under" prong contemplates a relationship involving "subjection, guidance, or control." *Sawyer*, 860 F.3d at 255 (citing *Watson*, 551 U.S. at 151). *See also Bennett*, 607 F.3d at 1086 (citing same language as dictionary definition of "under"). This broad "subjection, guidance, or control" standard, however, does not refer to or otherwise require a direct relationship or direct control by the Government, and other federal appellate courts have explicitly rejected such a requirement for "acting under" federal authority. *See, e.g.*, *Omega Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co*., 592 F. App'x 268, 272 (5th Cir. 2014) (rejecting argument "that a federal contractor cannot 'act under' federal authority unless the federal Government exercises direct and detailed control and supervision over the contractor," noting that although the court ruled in a prior case that "direct control . . . and oversight were 'quite sufficient' to demonstrate that the defendant was acting under federal direction, . . . we did not decide or consider the precise parameters of the control that was necessary") (quoting

- 11 -

*Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 399–400 (5th Cir. 1998)); *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 812–13 (3d Cir. 2016) (upholding removal by Government aircraft manufacturer and rejecting "notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of a federal officer or agency").

22.    PBM Defendant Express Scripts, Inc. holds a contract with the United States Department of Defense to provide services to members of the DOD health care program, TRICARE, across the country, including in Virginia.[7] Express Scripts, Inc. provides pharmacy benefit management services as well as administers the Tricare Mail Order Pharmacy through Pharmacy Defendants ESI Mail Pharmacy Service, Inc. and Express Scripts Pharmacy, Inc. under the detailed requirements of the contract and 51-page SOW. (SOW, at 1–2.) The contract requires the exclusive use of the DOD formulary created by the DOD's own Pharmacy & Therapeutics (P&T) Committee. *Id.* at 23. Express Scripts acts as a "fiscal intermediary on behalf of DoD" — through it "[t]he Government will be acquiring covered drugs with Government funds for use by the Government." *Id.* at 2.

23.    Express Scripts thus assists the Government in providing and managing healthcare for veterans — services the DOD would otherwise need to provide itself. *See Bennett*, 607 F.3d at 1088. Express Scripts' role as "fiscal intermediary," among other things, demonstrates it is acting pursuant to official authority. (SOW, at 2); *see also Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1247 (9th Cir. 2017) (allowing removal where government had delegated responsibility to defendants to make subrogation claims on

---

[7] *See* Express Scripts Military Healthy System Statement of Work (2017), *available at* https://health.mil/Reference-Center/FOIA-Documents/2017/12/12/Express-Scripts-Military-Health-System-Statement-of-Work (last visited Feb. 24, 2020) [hereinafter "Statement of Work" or "SOW"].

government's behalf).

    **B.**    **Express Scripts' Charged Conduct Relates to an Act under Color of Office.**

    24.    Express Scripts' charged conduct relates to an act under color of office. *See State of Maryland v. Soper*, 270 U.S. 9, 33 (1926) ("[T]he statute does not require that the prosecution must be for the very acts which the officer admits to have been done by him under federal authority. It is enough that his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution."). The Fourth Circuit has held that the third prong requires only conduct "in relation to" official authority, and thereby loosened the test applied, as reflected in the 2011 amendments to the statute. *See Sawyer*, 860 F.3d at 258 (noting the statute previously permitted removal of suits "for" any act under color of office, and was amended in 2011 to include suits **"for or relating to"** any act under color of office (emphasis added)). The amendments "'broaden[ed] the universe of acts' that enable federal removal," such that "there need be only '**a connection or association** between the act in question and the federal office.'" *Id.* (emphasis added).

    25.    This requirement for federal officer removal is satisfied because Express Scripts' charged conduct in the Complaint (PBM services and pharmacy distributions) relates to an act under color of office (administering the healthcare plan and mail order pharmacy for veterans under a DOD contract). *See Sawyer*, 860 F.3d at 258 (stating that the acting under prong is "broad," citing *Watson*, 551 U.S. at 147). Plaintiff alleges that PBMs including Express Scripts "acted as the gatekeepers of prescription drugs including opioids" and established national "formularies which govern which drugs are reimbursed and how." (Compl. ¶¶ 188.) With respect to the pharmacies, Plaintiff alleges they "did nothing to stem the flow of excess opioids into Winchester." *Id.* ¶ 15. Plaintiff relies on "every opioid prescription" filled, and specifically asserts

that Express Scripts offered mail order pharmacy services and maintained formularies that "allowed for the dispensing and reimbursement of . . . opioids," including those "at issue in this case." *Id.* ¶ 16, 209.

26.    Under the DOD contract, the Express Scripts PBM and mail pharmacy entities maintained the DOD's own formulary and provided mail order pharmacy services, respectively. (SOW, at 23.)   Plaintiff's broad allegations that Express Scripts maintained formularies and dispensed opioids cannot be separated from the services provided under the DOD contract.  (SOW, at 1–2.)  As the Opiate MDL similarly concluded as to a distributor, there is a sufficiently pled connection between Plaintiff's allegations of diversion, and Express Scripts' PBM and mail pharmacy services to remove on this basis.  *See In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1078.

### C.    Express Scripts Has Colorable Federal Defenses.

27.    Express Scripts can raise colorable federal defenses.  Because one of the purposes of federal officer removal is to provide a federal forum for federal defenses, "[p]roof of a 'colorable' federal defense . . . does not require the defendant to 'win his case before he can have it removed' nor even establish that the defense is 'clearly sustainable.'"  *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 210 (4th Cir. 2016) (citing *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

28.    Express Scripts can raise the government contractor defense, which applies when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Ripley*, 841 F.3d at 210 (holding defense applies to failure to warn claims) (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)).  The defense protects from "tort liability that arises as a result of the

contractor's 'compliance with the specifications of a federal government contract.'" *Getz v. Boeing Co*., 654 F.3d 852, 860 (9th Cir. 2011) (citing *In re Hanford Nuclear Reservation Litig.,* 534 F.3d 986, 1000 (9th Cir. 2008)).

29.     The Opiate MDL Court held that an opioid distributor satisfied the first two requirements where the government had "approved reasonably precise specifications," and the distributor's deliveries "conformed to those specifications." *In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1078.  Under the "low bar" for the final prong, the opioid distributor could plausibly argue that it "was aware of no greater danger than the government was already aware of."  *Id.*  Here, too, Express Scripts can raise the government contractor defense because it was providing pharmacy benefit management services and administering the mail order pharmacy for veterans under the specific requirements of the DOD's own formulary.  *See* SOW, at 23.

30.     In addition, Express Scripts can raise the defense of preemption based on the federal TRICARE statute, which provides the statutory authorization for the Secretary of Defense to enter into group health-insurance contracts.  *See* 10 U.S.C. §§ 1071, 1072(7), 1073(a), 1074g (Pharmacy benefits program).  The statute and accompanying federal regulations contain express preemption provisions.  *See* 10 U.S.C. § 1103 ("A law or regulation of a State or local government relating to health insurance, prepaid health plans, or other health care delivery or financing methods shall not apply to any contract entered into pursuant to this chapter by the Secretary of Defense," to the extent the state law is inconsistent, or preemption is necessary to implement or administer the contract); 32 C.F.R. § 199.17(a)(7)(iii).  Accordingly, the terms of the Department of Defense's TRICARE contract with Express Scripts would preempt any inconsistent state laws and preempt state claims that would interfere with implementation or administration of those contract terms or the TRICARE statutory scheme.

31.     Moreover, federal officer removal will allow this Action to proceed with the others in the Opiate MDL raising similar issues.  This includes 45 nearly identical First Wave, Second Wave, and Third Wave Cases already transferred to the MDL from this District and the Eastern District of Virginia, as well as other federal officer removed cases, such as a recently-transferred case to the Opiate MDL, *City of Portsmouth v. McKesson Corp.*, No. 2:19-cv-00331 (E.D. Va.) (Morgan, J.) (removed under the federal officer removal statute and transferred to the Opiate MDL on October 2, 2019); *see also* Exh. 1 (ESI Mail Pharmacy filed supplemental notices of removal under the federal officer statute in 11 of the Wave 1 Cases and 19 of the Wave 2 Cases).  Those transferred actions, like this case, are among more than 2,300 similar cases in jurisdictions around the country in which government entities have sued, among others, prescription medication manufacturers, distributors, retail pharmacies, and pharmacy benefit managers for alleged harms stemming from the abuse of opioid medications.  This case should thus be adjudicated in federal court and consolidated with other cases in the MDL, in furtherance of judicial economy, streamlined processing, and avoidance of inconsistent rulings.

32.     Finally, the Complaint implicates issues of national importance that should be decided by the federal MDL.  The Complaint in this Action is carefully patterned after the allegations of previously-filed opioid lawsuits, many of which are now part of the Opiate MDL. Like other plaintiffs in the Opiate MDL, Plaintiff in this Action expressly alleges that its claims raise issues of national importance, some of which implicate duties recognized by federal law. *See, e.g.*, Compl. ¶ 1 (describing an "opioid epidemic that has resulted in economic, social and emotional damage to virtually every community in the United States and tens of thousands of Americans" and citing reports from the United States Centers for Disease Control and Prevention for the proposition that "[p]rescription and illegal opioids account for more than sixty percent

(60%) of overdose deaths in the United States"); *see also id.* ¶ 320 (alleging that certain defendants' causal misconduct violated "Virginia and Federal Law"). Defendants are entitled to have their defenses decided by the MDL considering these issues of national importance.

## II. THERE IS COMPLETE DIVERSITY OF CITIZENSHIP BETWEEN PLAINTIFF AND ALL PROPERLY JOINED DEFENDANTS.

33.    Removal is proper on the separate and independent ground of diversity jurisdiction because there is complete diversity of citizenship between Plaintiff and all PBM Defendants (Express Scripts, Inc., Express Scripts Holding Company, CVS Health Corporation; Caremark Rx, L.L.C.; CaremarkPCS Health, L.L.C.; Caremark, L.L.C.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc.), the only properly joined Defendants.[8] Plaintiff is a Virginia citizen, and all the PBM Defendants are citizens of states or foreign states other than Virginia. The Doe Defendants should be disregarded, and the non-PBM Defendants are severable under Federal Rule of Civil Procedure 21 and the doctrine of fraudulent misjoinder. Thus, the PBM Defendants remove on these grounds.

### A. Plaintiff Is Diverse from All PBM Defendants.

#### 1. Plaintiff Is a Citizen of Virginia.

34.    Plaintiff City of Winchester is a Virginia citizen for purposes of diversity jurisdiction. *See Moor v. Alameda Cty.*, 411 U.S. 693, 721 (1973) (holding that Alameda County is a California citizen for purposes of diversity jurisdiction).

#### 2. No PBM Defendant Is a Citizen of Virginia.

35.    For purposes of diversity jurisdiction, a corporation is "a citizen of every State and

---

[8] The PBM Defendants (Express Scripts, Inc., Express Scripts Holding Company, Caremark, and OptumRx) assert fraudulent misjoinder and Rule 21 severance grounds for removal in their capacity as alleged PBMs. Defendants Express Scripts Pharmacy, Inc. and ESI Mail Pharmacy Service, Inc. are mail pharmacies and not PBMs, and thus do not assert these grounds for removal.

foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). A partnership is a citizen of every state in which its partners are citizens. *See Americold Realty Trust. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1015 (2016); *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004). The citizenship of a limited liability company is determined by reference to the citizenship of its members. *See Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011).

36.     Applying these principles, no PBM Defendant is a citizen of Virginia.

37.     Defendant Express Scripts Holding Company is a corporation organized under the laws of Delaware with its principal place of business in St. Louis, Missouri. (Compl. ¶ 164.)

38.     Defendant Express Scripts, Inc. is a corporation organized under the laws of Delaware with its principal place of business in St. Louis, Missouri. *Id*. ¶ 201.

39.     Defendant CVS Health Corporation is a Delaware corporation with its principal place of business in Woonsocket, Rhode Island. *Id*. ¶ 133.

40.     The sole member of Defendant Caremark Rx, L.L.C. is CVS Pharmacy, Inc., a Rhode Island corporation. Accordingly, Caremark Rx, L.L.C. is a citizen of Rhode Island.

41.     The sole member of Defendant Caremark, L.L.C. is Caremark Rx, L.L.C. Accordingly, it too is a citizen of Rhode Island.

42.     The sole member of Defendant CaremarkPCS Health, L.L.C. is Defendant CaremarkPCS, L.L.C. The sole member of CaremarkPCS, L.L.C. is Caremark Rx, L.L.C. Accordingly, both CaremarkPCS Heatlh, L.L.C. and CaremarkPCS, L.L.C. are citizens of Rhode Island.

43.     Defendant UnitedHealth Group Incorporated is a corporation organized under the

laws of Delaware with its principal place of business in Minnetonka, Minnesota.  *Id.* ¶ 210.

44.    Defendant OptumRx, Inc. is a corporation organized under the laws of California with its principal place of business in Irvine, California.  *Id.* ¶ 170.

45.    Defendant Optum, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Eden Prairie, Minnesota.  *Id.* ¶ 212.

46.    Accordingly, all PBM Defendants are citizens of a state other than Virginia.

**B.    The Citizenship of Doe Defendants Is Ignored.**

47.    The citizenship of unnamed, unidentified Doe Defendants is ignored for purposes of determining diversity jurisdiction.  *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of [diversity of citizenship], the citizenship of defendants sued under fictitious names shall be disregarded.").

**C.    The Citizenship of the Non-PBM Defendants Should Be Ignored.**

**1.    Non-PBM Defendants Should Be Severed Under Rule 21.**

48.    The claims against non-PBM Defendants should be severed under Federal Rule of Civil Procedure 21.  Defendants are severable under Rule 21 if they are either (i) unnecessary or dispensable under Rule 19, <u>or</u> (ii) if the claims against them are sufficiently distinct from claims against other defendants under Rule 20.  Here, all non-PBM Defendants should be severed on both grounds, each of which preserves diversity jurisdiction as to the PBM Defendants.

49.    As to severance of unnecessary and dispensable parties, it is settled law in the Fourth Circuit that "non-diverse parties whose presence is not essential under Rule 19 may be dropped to achieve diversity between the plaintiffs and the defendants."  *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 691 (4th Cir. 1978); *see Koehler v. Dodwell*, 152 F.3d 304, 308 (4th Cir. 1998) ("[A] party . . . whose presence deprives the court of jurisdiction may be

dropped or severed from the action."). As the United States Supreme Court has held, "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989); *see Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572–73 (2004).

50.    *Sullivan v. Calvert Memorial Hospital*, 117 F. Supp. 3d 702 (D. Md. 2015), is particularly instructive. There, a Maryland citizen filed suit in state court for injuries arising from the implant of a medical device. *Id.* at 703. The plaintiff asserted claims against the out-of-state manufacturer of the medical device, as well as non-diverse healthcare providers who performed her surgery. *Id.* at 703–04. Notwithstanding a lack of complete diversity on the face of the complaint, the manufacturer removed the case to federal court, arguing the court should preserve diversity jurisdiction by severing the non-diverse healthcare providers as unnecessary and dispensable parties under Rule 19. *Id.* at 704. The court agreed. *Id.* at 707.

51.    Even though the claims against the manufacturer and the healthcare providers "involve[d] the same physical object," the court held that severance was appropriate because the claims against the two sets of defendants involved "distinctly different" "legal standards and factual inquiries." *Id.* at 706. As the court explained, "[t]he [healthcare providers] are not necessary parties to [plaintiff's] claims against the [diverse defendant] because the resolution of her claims against the [healthcare providers] would not necessarily resolve her claims against the [manufacturer]." *Id.* at 707. "[Plaintiff's] medical negligence claims against the [healthcare providers] hinge on whether they deviated from the standard of care of healthcare professionals . . . . Her products liability claims against the [manufacturer] turn on whether [it] . . . improperly designed, manufactured, tested, advertised, and gave directions regarding use of the [medical

device].  These standards of care and the deviation from same are different and distinct from one another."  *Id.*

52.    The court further explained that there was "a critical policy reason" to sever the non-diverse defendants — namely, it would allow the claims against the diverse defendant to be transferred to an MDL.  *Id.*  "Whatever inconvenience [plaintiff] might suffer from her having to litigate her claims in two separate forums, that inconvenience is far exceeded by the prejudice of requiring the manufacturer . . . to defend on many more than just two fronts.  Forcing the [diverse defendant] to litigate [these] claims in state courts throughout the country whenever and wherever the claims might be joined to claims against healthcare providers that installed the device would defeat the entire purpose of the MDL."  *Id.*  (citation and quotes omitted).  Accordingly, the court severed the non-diverse defendants and denied remand as to the diverse defendant.  *Id.*

53.    Numerous decisions of district courts in this Circuit and other circuits are in accord with *Sullivan*.  *See, e.g.*, *Cooke-Bates v. Bayer Corp.*, No. 3:10-cv-261, 2010 WL 3984830, at *4 (E.D. Va. Oct. 8, 2010); *Joseph v. Baxter Int'l Inc.*, 614 F. Supp. 2d 868, 872–74 (N.D. Ohio 2009); *Mayfield v. London Women's Care, PLLC*, No. 15-19-DLB, 2015 WL 3440492, at *5 (E.D. Ky. May 28, 2015); *DeGidio v. Centocor, Inc.*, No. 3:09CV721, 2009 WL 1867676, at *3–*4 (N.D. Ohio July 8, 2009); *McElroy v. Hamilton Cty. Bd. of Educ.*, No. 1:12-cv-297, 2012 WL 12871469, at *2–*3 (E.D. Tenn. Dec. 20, 2012).

54.    Likewise, here, this Court should sever the non-PBM Defendants under Rule 21 and uphold removal as to the PBM Defendants because the remaining Defendants are both unnecessary and dispensable under Rule 19.

55.    Alleged joint tortfeasors are unnecessary parties as a matter of settled law.  *See Temple v. Synthes Corp., LTD*, 498 U.S. 5, 7–8 (1990) (holding that joint tortfeasors are not

necessary parties under Rule 19); *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 826 (E.D. Va. 2005) ("[A] non-diverse defendant who is a jointly and severally liable tort-feasor is *not* an indispensable party to a diversity action under Rule 19 and may be dismissed by the court in order for it to retain jurisdiction." (citation and quotes omitted)).

56.     Moreover, just like *Sullivan* (and many other cases) in which the plaintiff's claims against the diverse defendants and non-diverse defendants were materially distinct, Plaintiff's allegations in this case against the PBM Defendants are materially distinct from those against the other Defendants.  Specifically, Plaintiff's allegations against the Manufacturer Defendants center on their alleged misrepresentations concerning the risks and benefits of FDA-approved prescription opioid medications made in marketing and promoting the medications.  Plaintiff alleges that the Distributor Defendants and Pharmacy Defendants failed to monitor, report and halt suspicious orders of opioid medications.  By contrast, Plaintiff's allegations against the PBM Defendants concern their alleged design of benefit plans determining which medications will be covered by pharmacy benefit plans.  There is no material overlap between the factual allegations against the PBM Defendants, on the one hand, and the non-PBM Defendants, on the other, that would make the non-PBM Defendants necessary or indispensable parties under Rule 19.  Rather, just like *Sullivan*, "the resolution of [Plaintiff's] claims against the [other Defendants] would not necessarily resolve [Plaintiff's] claims against the [PBM Defendants]."  117 F. Supp. 3d at 707.

57.     Beyond Rule 19, the claims against non-PBM Defendants are also misjoined under Rule 20, which provides an independent basis for severance.  Rule 21 permits severance of claims against non-diverse defendants that do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as the claims against other defendants.  Fed. R. Civ. Proc. 20(a)(1)(A); *see Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach, LLP*, No. Civ.A. 02-2435-

CM, 2003 WL 21313957, at *5 (D. Kan. May 23, 2003) ("Rule 21 is a mechanism for correcting . . . the misjoinder . . . of parties or claims" which "arises when the claims and parties fail to satisfy any of the conditions of permissive joinder under Rule 20(a)." (citation omitted)).  Courts have repeatedly denied remand as to diverse defendants and severed claims against non-diverse defendants where the claims against the non-diverse defendants were separate and distinct, and arose from different transactions or occurrences.[9]  Because of the distinct factual underpinnings of the claims against the different sets of Defendants here, these claims cannot properly be joined together.

58.    Severance is particularly appropriate here because it will enable the diverse parties to benefit from the significant efficiencies stemming from participation in coordinated MDL proceedings in the Northern District of Ohio.   Courts across the country have repeatedly recognized the importance of these efficiencies in severing non-diverse defendants to perfect diversity jurisdiction.   *See, e.g.*, *Sullivan*, 117 F. Supp. 3d at 707 ("Severance is particularly appropriate in this case because it would allow for the transfer of [plaintiff's] claims against the [diverse defendant] to Multi-District Litigation . . . ."); *Sutton*, 251 F.R.D. at 505 ("Plaintiffs' claims against the [non-diverse] Defendants are severed and remanded pursuant to Rule 21 . . . so as to preserve the removing Defendants' right to removal in the remaining multidistrict action and preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum."); *Baxter*, 614 F. Supp. 2d at 873

---

[9] *See Todd v. Cary's Lake Homeowners Ass'n*, 315 F.R.D. 453, 458 (D.S.C. 2016); *Westley v. Progressive Specialty Ins. Co.*, No. 14-1410, 2014 WL 4489620, at *6–*7 (E.D. La. Sept. 10, 2014); *Loeffelbein*, 2003 WL 21313957, at *6; *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 502-05 (E.D. Cal. 2008); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 683-84 (D. Nev. 2004); *Anderson v. State Farm Mut. Auto. Ins. Co.*, No. 4:08CV345-RH/WCS, 2008 WL 11366408, at *3 (N.D. Fla. Nov. 10, 2008); *DirecTV, Inc. v. Beecher*, 296 F. Supp. 2d 937, 945 (S.D. Ind. 2003); *Randleel v. Pizza Hut of Am., Inc.*, 182 F.R.D. 542, 543 (N.D. Ill. 1998).

("[P]laintiffs will benefit from the MDL process: they will not bear the burden of having to engage on their own, and at their sole expense, in discovery vis-à-vis [the diverse manufacturer]."); *Mayfield*, 2015 WL 3440492, at *5 ("[I]f the surviving federal claims are transferred to the Ethicon MDL, the prospect of dual litigation has undeniable upside.").

59.     As the Eastern District of Virginia has explained in materially identical circumstances, "[t]he Court's decision to sever . . . [the non-diverse healthcare provider] will not greatly prejudice [plaintiff], but failure to do so could subject [the diverse defendant] to considerable prejudice.  [Plaintiff] will be forced to pursue two separate suits, but it will not alone bear the administrative and financial burdens of pursuing its claims against [the diverse defendant] in the MDL proceedings.  For its part, [the diverse defendant] could be exposed to numerous related suits if courts considering suits similar to this one refused to sever claims against [the defendant] from those against the providers that prescribed [the drug]."  *Cooke-Bates*, 2010 WL 3984830, at *4 (citations omitted).

60.     Plaintiff's assertion of some causes of action against "all Defendants" does not change the analysis.  Severance is appropriate because the *factual basis* for Plaintiff's claims against the PBM Defendants is materially distinct from the factual basis for Plaintiff's claims against the other Defendants.  *See Loeffelbein*, 2003 WL 21313957, at *6 ("While plaintiffs do not distinguish between each of the defendants in the individual counts of the petition, the counts clearly arise from two different sets of facts."); *Nelson v. Aim Advisors, Inc.*, No. 01-CV-0282-MJR, 2002 WL 442189, at *3 (S.D. Ill. Mar. 8, 2002) ("Although Plaintiffs' claims against all Defendants are pled under the same legal theory, it is only in this abstract sense that Plaintiffs' claims share anything in common . . . . [and] does not mean that there are common issues of law and fact sufficient to satisfy Rule 20(a).").  If Plaintiff wants to pursue claims against the other

Defendants, Plaintiff has an "adequate remedy . . . in state court." *Baxter*, 614 F. Supp. 2d at 873.

### 2.    The Non-PBM Defendants Are Fraudulently Misjoined.

61.    As an alternative to severance under Rule 21, the citizenship of non-PBM Defendants should be ignored for purposes of diversity jurisdiction under the fraudulent misjoinder doctrine.  As district courts in this Circuit have explained, fraudulent misjoinder (or procedural misjoinder) "is an assertion that claims against certain defendants . . . have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal." *Cty. Comm'n of McDowell Cty. v. McKesson Corp.*, 263 F. Supp. 3d 639, 644 (S.D. W. Va. 2017) (citation and quotes omitted); *see also Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on another ground by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)).

62.    While the Fourth Circuit has neither accepted nor rejected the fraudulent misjoinder doctrine, the "weight of authority" from district courts in this Circuit "accepts the doctrine." *McKesson Corp.*, 263 F. Supp. 3d at 645.

63.    In opioid-related cases like this one, federal district courts in this Circuit have relied on the fraudulent misjoinder doctrine to ignore the citizenship of non-diverse defendants and deny remand based on diversity jurisdiction.  *See, e.g.*, *McKesson Corp.*, 263 F. Supp. 3d at 647; *City of Huntington v. AmerisourceBergen Drug Corp.*, Civ. A. No. 3:17-01362, 2017 WL 3317300, at *4–*5 (S.D. W. Va. Aug. 3, 2017).  In *McKesson Corp.*, the plaintiff filed suit in state court against diverse distributors of opioid products for allegedly "flood[ing] McDowell County with opioids well beyond what was necessary to address pain and other [legitimate] reasons," and also against a non-diverse doctor for allegedly "provid[ing] written opioid prescriptions for patients, knowing that the drugs were likely to be abused, diverted or misused."  263 F. Supp. 3d at 642.  Denying

plaintiff's remand motion, the court held that "plaintiff's claims against the [distributors] and the claims against [the doctor]" lacked "common questions of law or fact" and were "separate and distinct" and did not defeat diversity.  *Id.* at 647.  In *City of Huntington*, the court reached the same conclusion for substantially the same reasons.  2017 WL 3317300, at *5 (claims against diverse and non-diverse defendants were "separate and distinct.").

64.    Even if the Court finds that the non-PBM Defendants are not subject to severance under Rule 21, it should find the claims against them misjoined under the fraudulent misjoinder doctrine.

65.    In sum, because Plaintiff is a Virginia citizen, and none of the PBM Defendants is a Virginia citizen, there is complete diversity of citizenship.  *See* 28 U.S.C. § 1332(a).

### D.    The Amount In Controversy Exceeds $75,000.

66.    "[A] defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 554 (2014).

67.    Plaintiff seeks "compensatory damages in an amount not less than $50,000,000" plus punitive damages of "$350,000 per defendant."  Compl. Prayer for Relief ¶¶ (1)-(2).  The alleged amount in controversy thus well exceeds $75,000, exclusive of interest and costs.

## III.    PROCEDURAL COMPLIANCE

68.    All procedural requirements for removal which apply under 28 U.S.C. § 1446 and this Court's Local Civil Rules have been satisfied.

### A.    This Notice Is Timely.

69.    Removal notices must be filed within 30 days of the date upon which the removing defendant was served with process. 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti*

*Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999). "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. §§ 1446(b)(2)(C). Here, none of the Removing Defendants have been served with process, rendering the filing of this Notice of Removal timely.

      **B.    The Consent Requirement Is Satisfied.**

      70.    Federal officer removal does not require co-defendants to consent to or join in the removal. *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 842 (S.D. Ill. 2006) (noting the "settled rule that removal under 28 U.S.C. § 1442 can be effected by any defendant in an action, with or without the consent of co-defendants."); *see also Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) (stating that removal under § 1442 "allows a federal officer [or person acting under that officer] independently to remove a case to federal court even though that officer [or person acting under that officer] is only one of several named defendants"); *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960) (holding removal of entire action occurs even where "some persons entitled to join in the removal petition did not").

      71.    For the purposes of removal based on diversity jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1446(b), all defendants who have been properly joined and served must consent to removal. However, consent is not required from fraudulently joined or fraudulently misjoined defendants. *See Shaffer v. Nw. Mut. Life Ins. Co.*, 394 F. Supp. 2d 814, 819 (N.D. W. Va. 2005) ("[F]raudulently joined defendants are not required to consent to a codefendant's notice of removal." (citing *Fleming v. United Teachers Assocs. Ins. Co.*, 250 F. Supp. 2d 658, 663 (S.D. W. Va. 2003)); *see also Cooke-Bates v. Bayer Corp.*, No. 3:10-CV-261, 2010 WL 3064304, at *3 (E.D. Va. Aug. 2, 2010) (explaining that fraudulent misjoinder is an exception to the unanimity

rule).

72.     Here, the consent requirement is satisfied because no defendant has yet been served. Furthermore, the only properly-joined defendants are the PBMs, and the other PBMs join in and consent to this removal.  In addition, although not required, the following Defendants consent to removal: McKesson Corporation; McKesson Medical-Surgical, Inc.; AmerisourceBergen Drug Corporation; Cardinal Health Inc.; Mylan Pharmaceuticals Inc.; Mylan Institutional Inc.; Teva Pharmaceuticals USA, Inc.; Barr Laboratories, Inc.; Cephalon, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Mallinckrodt LLC; SpecGx LLC; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Par Pharmaceutical Companies, Inc.; Par Pharmaceutical, Inc.; Walgreen Co.; Walgreen Eastern Co. Inc.; Henry Schein, Inc.; General Injectables & Vaccines, Inc.; and Insource, Inc.; Indivior, Inc.; CVS Pharmacy, Inc.; CVS TN Distribution, L.L.C.; Virginia CVS Pharmacy, L.L.C.; CaremarkPCS, L.L.C.; and Walmart Inc. *See infra* p. 31.  The consenting Defendants expressly reserve, and do not waive, any and all defenses that may be available to them, including those related to personal jurisdiction and service of process.

**C.    Additional Procedural Matters Are Satisfied.**

73.     In accordance with 28 U.S.C. § 1446(a), a copy of the operative Complaint, and all "process, pleadings, and orders" served on the moving defendants in the state court proceeding is attached as Exhibit 2.

74.     The Civil Cover Sheet is attached as **Exhibit 3.**

75.     In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice, Removing Defendants will serve a copy of this Notice on Plaintiff and will file a copy of the Notice with the Clerk of the Circuit Court for the City of Winchester, Virginia.

76.     Nothing in this notice should be interpreted as a waiver or relinquishment of any of the Removing Defendants' rights to assert any and all defenses or objections to the Complaint, including as to personal jurisdiction.  If there are any questions that arise as to the propriety of removal of this Action, Removing Defendants respectfully request the opportunity to submit briefing, argument, and additional evidence as necessary to support removal.

77.     Removing Defendants reserve the right to amend or supplement this Notice.

## CONCLUSION

WHEREFORE, the Removing Defendants hereby remove this Action to this Court for further proceedings according to law.

Dated: February 25, 2020                     Respectfully submitted,

*/s/ Emily M. Scott*
Emily M. Scott
Virginia Bar No. 71435
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Richmond, VA 23223
Tel.: (804) 771-9539
Fax: (804) 644-0957
escott@hirschlerlaw.com

*(Attorneys for Defendants Express Scripts,*
*Inc., Express Scripts Holding Company,*
*Express Scripts Pharmacy, Inc., and ESI Mail*
*Pharmacy Service, Inc.)*

Julian W. Park
California Bar No. 263501
(*Pro hac vice forthcoming*)
KOBRE & KIM LLP
150 California Street, 19th Floor
San Francisco, California 94111
Tel.: (415) 582-4800
Fax: (415) 582-4811
julian.park@kobrekim.com

(Continued on next page).

Matthew I. Menchel
Florida Bar No. 12043
(*Pro hac vice forthcoming*)
Adriana Riviere-Badell
Florida Bar No. 30572
(*Pro hac vice forthcoming*)
KOBRE & KIM LLP
201 South Biscayne Boulevard
Suite 1900
Miami, Florida 33131
Tel.: (305) 967 6100
Fax: (305) 967 6120
adriana.riviere-badell@kobrekim.com
matthew.menchel@kobrekim.com


*/s/ Michael W. Smith*
Michael W. Smith (VSB No. 01125)
S. Perry Coburn (VSB No. 78372)
Shannan M. Fitzgerald (VSB No. 90712)
CHRISTIAN & BARTON, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Tel. (804) 697-4100
Fax (804) 697-4112
msmith@cblaw.com
pcoburn@cblaw.com
sfitzgerald@cblaw.com


Adam L. Fotiades (*pro hac vice forthcoming*)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, D.C. 20036–5807
Tel. (202) 778–1800
afotiades@zuckerman.com


*Attorneys for Defendants CVS Health
Corporation, Caremark Rx, L.L.C.,
CaremarkPCS Health, L.L.C., and Caremark,
L.L.C.*

Steven G. Kobre
New York Bar No. 2581940
(*Pro hac vice forthcoming*)
KOBRE & KIM LLP
800 Third Avenue
New York, New York, 10022
Tel: (212) 488-1200
Fax: (212) 488-1220
steven.kobre@kobrekim.com


*(Attorneys for Defendants Express Scripts, Inc.,
Express Scripts Holding Company, Express
Scripts Pharmacy, Inc., and ESI Mail Pharmacy
Service, Inc.)*


*/s/ Turner A. Broughton*
Turner A. Broughton
Virginia Bar No.: 42627
WILLIAMS MULLEN
200 South 10th Street
Suite 1600
Richmond, VA 23219
Tel.: (804) 420-6926
Fax: (804)644-0957
tbroughton@williamsmullen.com


*Attorney for Defendants UnitedHealth Group
Incorporated, Optum, Inc., and
OptumRx, Inc.*

<u>**WRITTEN CONSENT OF OTHER DEFENDANTS**</u>

**The undersigned Defendants consent to the removal of this matter.**

| | |
|---|---|
| **McKESSON CORPORATION AND McKESSON MEDICAL-SURGICAL INC.**<br><br>**By Counsel:**<br><br><u>*/s/ Peter J. Raupp*</u><br>Peter J. Raupp (VSB No. 48689)<br>STEPTOE & JOHNSON PLLC<br>P.O. Box 1588<br>Charleston, WV 25326-1588<br>Telephone: (304) 353-8000<br>peter.raupp@steptoe-johnson.com<br><br>*Counsel for McKesson Corporation and McKesson Medical-Surgical, Inc.*<br><br><br>**ENDO HEALTH SOLUTIONS INC., ENDO PHARMACEUTICALS INC., PAR PHARMACEUTICAL COMPANIES, INC., AND PAR PHARMACEUTICAL, INC.**<br><br>**By Counsel:**<br><br><u>Tirzah S. Lollar</u><br>Virginia Bar Number: 68145<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Ave, NW<br>Washington, DC 20001<br>Tel.: (202) 942-6199<br>Fax: (202) 942-5999<br>E-Mail: Tirzah.Lollar@arnoldporter.com<br><br>*Attorney for Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Par Pharmaceutical Companies, Inc.; Par Pharmaceutical, Inc.* | **CVS PHARMACY, INC., CVS TN DISTRIBUTION, L.L.C., VIRGINIA CVS PHARMACY, L.L.C., CAREMARKPCS, L.L.C.**<br><br>**By Counsel:**<br><br><u>*/s/ Michael W. Smith*</u><br>Michael W. Smith (VSB No. 01125)<br>S. Perry Coburn (VSB No. 78372)<br>Shannan M. Fitzgerald (VSB No. 90712)<br>CHRISTIAN & BARTON, L.L.P.<br>909 East Main Street, Suite 1200<br>Richmond, Virginia 23219<br>Tel. (804) 697-4100<br>Fax (804) 697-4112<br>msmith@cblaw.com<br>pcoburn@cblaw.com<br>sfitzgerald@cblaw.com<br><br>Adam L. Fotiades (*pro hac vice forthcoming*)<br>ZUCKERMAN SPAEDER LLP<br>1800 M Street, NW, Suite 1000<br>Washington, D.C. 20036-5807<br>Tel. (202) 778-1800<br><u>afotiades@zuckerman.com</u><br><br>*Attorneys for Defendants CVS Pharmacy, Inc., CVS TN Distribution, L.L.C., Virginia CVS Pharmacy, L.L.C., and CaremarkPCS, L.L.C.* |

**TEVA PHARMACEUTICALS USA, INC.; BARR LABORATORIES, INC.; CEPHALON, INC.; WATSON LABORATORIES, INC.; ACTAVIC LLC; AND ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC.**

**By Counsel:**

*/s/ James Kevin Fee*
James Kevin Fee (VA Bar. No 88376)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel.: (202)-739-5353
kevin.fee@morganlewis.com

Nancy L. Patterson*
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Tel.: (713) 890-5000
nancy.patterson@morganlewis.com

Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel.: (215) 963-5000
steven.reed@morganlewis.com

* denotes national counsel who will seek pro hac vice admission

*Counsel for Defendants Teva Pharmaceuticals USA, Inc.; Barr Laboratories, Inc.; Cephalon, Inc.; Watson Laboratories, Inc.; Actavis LLC; and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.*

**WALGREEN CO. AND WALGREEN EASTERN CO. INC.**

**By Counsel:**

*/s/ Jonathan P. Floyd*
Jonathan P. Floyd (Va. State Bar No. 88458)
Troutman Sanders LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1435
Facsimile: (804) 697-1339
jonathan.floyd@troutman.com

*Attorneys for Walgreen Co. and Walgreen Eastern Co. Inc.*

**CARDINAL HEALTH INC.**

**By Counsel:**

W. Huntington Byrnes (VSB No. 46714)
BYRNES GOULD PLLC
312 Main Street, Suite 200
P.O. Box 47
Danville, VA 24543
Tel. (434) 792-2424
Fax (434) 321-1661
hbyrnes@byrnesgould.com

*Counsel for Cardinal Health Inc.*

**MALLINCKRODT LLC AND**
**SPECGX LLC**

**By Counsel:**

*/s/ Sarah B. Miller*
Sarah B. Miller (VSB No. 77087)
smiller@bassberry.com
Jessalyn H. Zeigler (*pro hac vice* forthcoming)
jzeigler@bassberry.com
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: (615) 742-6200

Andrew J. O'Connor (*pro hac vice*
forthcoming)
andrew.o'connor@ropesgray.com
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000

*Counsel for Mallinckrodt LLC and*
*SpecGx LLC*

**INDIVIOR, INC.**

**By Counsel:**

Thomas M. Trucksess (VSB No. 77412)
HOGAN LOVELLS US LLP
8350 Broad Street, 17th Floor
Tysons, Virginia 22102
Telephone: 703.610.6181
Facsimile: 703.610.6200
Email: thomas.trucksess@hoganlovells.com

*Counsel for Indivior, Inc.*

**AMERISOURCEBERGEN**
**DRUG CORPORATION**

**By Counsel:**

*/s/ Brent R. Gary*
Brent R. Gary (VSB No. 66592)
bgary@reedsmith.com
REED SMITH LLP
7900 Tysons One Place
Suite 500
McLean, VA 22102
Telephone: (703) 641-4200
Facsimile: (703) 641-4240
bgary@reedsmith.com

*/s/ Justin M. Sizemore*
Justin M. Sizemore (VSB No. 71859)
REED SMITH LLP
901 East Byrd Street
Suite 1900
Richmond, VA 23219
Telephone: (804) 344-3400
Facsimile: (804) 344-3410
jsizemore@reedsmith.com

*Counsel for AmerisourceBergen Drug*
*Corporation*

| MYLAN PHARMACEUTICALS INC. AND MYLAN INSTITUTIONAL INC. | HENRY SCHEIN, INC.; GENERAL INJECTABLES & VACCINES, INC.; AND INSOURCE, INC. |
|---|---|
| **By Counsel:** | **By Counsel:** |
| */s/ Rebecca C. Mandel* | */s/ Paul C. Kuhnel* |
| Rebecca C. Mandel (VA Bar No. 91936) | Paul C. Kuhnel (VSB No. 28151) |
| HOGAN LOVELLS US LLP | Paul.Kuhnel@leclairryan.com |
| 555 13th St., NW | LECLAIRRYAN |
| Washington, DC 20004 | 1800 Wells Fargo Tower, Drawer 1200 |
| Tel: (202) 637-5600 | Roanoke, Virginia 24006 |
| Fax: (202) 637-5910 | (540) 510-3051 Direct |
| rebecca.mandel@hoganlovells.com | (540) 510-3050 Fax |
| | |
| Jon M. Talotta | John P. McDonald |
| Emily A. Gomes | jpmcdonald@lockelord.com |
| HOGAN LOVELLS US LLP | C. Scott Jones |
| 8350 Broad St. | sjones@lockelord.com |
| Tysons, VA 22102 | Lauren M. Fincher |
| Tel: (703) 610-6100 | lfincher@lockelord.com |
| Fax: (703) 610-6200 | Brandan J. Montminy |
| jon.talotta@hoganlovells.com | brandan.montminy@lockelord.com |
| emily.gomes@hoganlovells.com | |
| | *Counsel for Henry Schein, Inc.; General* |
| *Counsel for Defendant Mylan* | *Injectables & Vaccines, Inc.; and Insource,* |
| *Pharmaceuticals Inc. and Mylan Institutional* | *Inc.* |
| *Inc.* | |

**WALMART INC.**

**By Counsel:**

*/s/ Raymond D. Jackson*
Raymond D. Jackson (Va. Bar No. 89275)
JONES DAY
Sarah Conway
Christopher Lovrien
555 S. Flower Street, 50th Floor
Los Angeles, CA 90071
Tel: (213) 243-2567
sgconway@JonesDay.com
cjlovrien@jonesday.com

Raymond D. Jackson
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel: (202) 879-3422

*Counsel for Walmart Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 25, 2020, the foregoing document was electronically filed with the Clerk of the Court, to be served by the Court's electronic notification system upon all attorneys of record. Other notice is being sent to the parties via U.S. Mail Postage Prepaid.

| Plaintiff | Attorneys |
|---|---|
| City of Winchester, Virginia | Grant Morris<br>Kevin Sharp<br>Andrew Miller<br>Jonathan Tepe<br>R. Johan Conrod, Jr.<br>SANFORD HEISLER SHARP, LLP<br>611 Commerce Street, Suite 3100<br>Nashville, Tennessee 37203<br>Tel: (615) 434-7000<br>gmorris@sanfordheisler.com<br>ksharp@sanfordheisler.com<br>amiller@sanfordheisler.com<br>jtepe@sanfordheisler.com<br>JConrod@sanfordheisler.com<br><br>Joanne Cicala<br>THE CICALA LAW FIRM PLLC<br>101 College Street<br>Dripping Springs, Texas 78620<br>Tel: (512) 275-6550<br>joanne@cicalapllc.com<br><br>W. Edgar Spivey<br>Patrick H. O'Donnell<br>KAUFMAN CANOLES, PC<br>150 W. Main Street, Suite 2100<br>Norfolk, VA 23510-1665<br>Tel: (757) 624-3196<br>wespivey@kaufcan.com<br>phodonnell@kaufcan.com |

| Defendants | Address |
|---|---|
| Mallinckrodt plc | CT Corporation System<br>120 South Central Avenue, Suite 400<br>Clayton, Missouri 63105 |
| Mallinckrodt LLC | CT Corporation System<br>4701 Cox Road, Suite 285<br>Glen Allen, Virginia 23060 |
| SpecGX LLC | The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, Delaware 19801 |
| Endo Health Solutions, Inc; Endo Pharmaceuticals, Inc.; PAR Pharmaceutical Companies, Inc. | The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, Delaware 19801 |
| PAR Pharmaceutical, Inc. | CT Corporation System<br>28 Liberty Street<br>New York, New York 10005 |
| Teva Pharmaceuticals USA, Inc. | Corporate Creations Network Inc.<br>3411 Silverside Road Tatnall Building, Suite 104<br>Wilmington, Delaware 19810 |
| Cephalon, Inc. | 41 Moores Road<br>Frazer, Pennsylvania 19355 |
| Watson Laboratories, Inc. | Corporate Creations Network Inc.<br>8275 South Eastern Avenue, #200<br>Las Vegas, Nevada 89123 |
| Actavis Pharma, Inc. | Corporate Creations Network Inc.<br>6802 Paragon Place #410<br>Richmond, Virginia 23230 |
| Actavis LLC | Corporate Creations Network Inc.<br>3411 Silverside Road Tatnall Building, Suite 104<br>Wilmington, Delaware 19810 |

| | |
|---|---|
| Allergan Finance, LLC; Allergan plc | The Corporation Trust Company of Nevada<br>701 S. Carson Street, Suite 200<br>Carson City, Nevada 89701 |
| Barr Laboratories, Inc. | Corporate Creations Network Inc.<br>6802 Paragon Place, Suite 410<br>Richmond, Virginia 23230 |
| Mylan Pharmaceuticals Inc.; Mylan Institutional Inc. | Rebecca Mandel<br>HOGAN LOVELLS LLP<br>555 Thirteenth Street, NW<br>Washington, D.C. 20004<br>rebecca.mandel@hoganlovells.com |
| Indivior Inc. | Corporation Service Company<br>251 Little Falls Drive,<br>Wilmington, Delaware 19808 |
| McKesson Corporation; McKesson Medical-Surgical, Inc. | Corporation Service Company<br>100 Shockoe Slip, 2nd Floor<br>Richmond, Virginia 23219 |
| Cardinal Health, Inc. | CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219 |
| AmerisourceBergen Drug Corporation | CT Corporation System<br>4701 Cox Road, Suite 285<br>Glen Allen, Virginia 23060 |
| Henry Schein, Inc. | Corporation Service Company<br>100 Shockoe Slip, 2nd Floor<br>Richmond, Virginia 23219 |
| General Injectables & Vaccines, Inc. | Corporation Service Company<br>100 Shockoe Slip, 2nd Floor<br>Richmond, Virginia 23219 |
| Insource, Inc. | Corporation Service Company<br>100 Shockoe Slip, 2nd Floor<br>Richmond, Virginia 23219 |
| CVS Pharmacy, Inc.; Virginia CVS Pharmacy, L.L.C.; CaremarkPCS, L.L.C. | CT Corporation System<br>4701 Cox Road, Suite 285<br>Glen Allen, Virginia 23060 |

| | |
|---|---|
| CVS TN Distribution, L.L.C. | CT Corporation System<br>300 Montvue Road<br>Knoxville, Tennessee 37919 |
| Walgreens Boots Alliance, Inc. | Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, Delaware 19808 |
| Walgreen Co. | Corporation Service Company<br>100 Shockoe Slip, 2nd Floor<br>Richmond, Virginia 23219 |
| Walgreen Eastern Co., Inc. | The Prentice-Hall Corporation<br>System, Inc.<br>80 State Street<br>Albany, New York, 12207 |
| Walmart Inc. | CT Corporation System<br>4701 Cox Rd. Ste 285<br>Glen Allen, VA 23060 |
| Rite Aid Corp. | The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange St.<br>Wilmington, Delaware 1980 |
| Rite Aid of Maryland, Inc.; Rite Aid Mid-Atlantic | The Corporation Trust, Incorporated<br>2405 York Road, Suite 201<br>Lutherville Timonium, Maryland 21093-2264 |
| Rite Aid of Virginia, Inc. | CT Corporation System<br>4701 Cox Rd. Ste. 285,<br>Glen Allen, Virginia 23060 |
| Eckerd Corporation | CT Corporation System<br>4701 Cox Rd. Ste 285<br>Glen Allen, Virginia 23060 |

Dated: February 25, 2020     Respectfully Submitted,

            By: */s/ Emily M. Scott*   
            Emily M. Scott
            Virginia Bar No. 71435
            HIRSCHLER FLEISCHER, P.C.
            The Edgeworth Building
            2100 East Cary Street
            Richmond, VA 23223
            Tel.: (804) 771-9539
            Fax: (804) 644-0957
            escott@hirschlerlaw.com

            *(Attorneys for Defendants Express Scripts, Inc.,*
            *Express Scripts Holding Company, Express*
            *Scripts Pharmacy, Inc., and ESI Mail Pharmacy*
            *Service, Inc.)*